IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARRIOTT HOTEL SERVICES, LLC, as manager of the San Antonio Marriott Riverwalk and the San Antonio Marriott Rivercenter<br><br>Plaintiff,<br><br>v.<br><br>American Library Association,<br><br>Defendant. | Case No.: 1:24-cv-11961 |

**PLAINTIFF'S COMPLAINT**

Plaintiff MARRIOTT HOTEL SERVICES, LLC, as manager of as manager of the San Antonio Marriott Riverwalk ("Riverwalk Hotel") and the San Antonio Marriott Rivercenter ("Rivercenter Hotel"), by and through its undersigned counsel, files its Complaint against Defendant American Library Association ("Defendant" or "ALA"), and alleges as follows:

**PARTIES**

1.  Plaintiff MARRIOTT HOTEL SERVICES is a limited liability company organized and existing under the laws of the State of Delaware ("Marriott"). Marriott is the manager of the as manager of the San Antonio Marriott Riverwalk ("Riverwalk Hotel") and the San Antonio Marriott Rivercenter ("Rivercenter Hotel"). The Rivercenter Hotel and the Riverwalk Hotels are Marriott managed hotels located in Bexar County, Texas. At all relevant times hereto, Marriott was authorized to transact business in, and does transact business in, the State of Texas.

2.  Upon information and belief, Defendant American Library Association is a not-for-profit corporation incorporated under the laws of Massachusetts. Defendant's principal place of

business is 225 N Michigan Ave., Ste 1300 Chicago, IL 60601.

## JURISDICTION & VENUE

3. The United States District Court has diversity jurisdiction over this matter pursuant 28 U.S.C. §1332, as the parties are residents of different states, and the amount in controversy exceeds $75,000.

4. Defendant's principal place of business is located within the federal judicial district identified in the Complaint. Venue is proper pursuant to 28 U.S.C. § 1391.

5. The contracts underlying this dispute contain a forum selection clause requiring litigation to be conducted in Chicago, Illinois.

## COUNT I - BREACH OF EXPRESS CONTRACT
(RIVERWALK CONTRACT - LIQUIDATED DAMAGES)

6. On December 29, 2016, upon the signature of the Riverwalk Hotel's representative, the Riverwalk Hotel and ALA entered into a written Group Sales Agreement, (the "Riverwalk Agreement"), pursuant to which ALA was obligated to hold a program at the Riverwalk Hotel from January 16, 2022 through January 25, 2022 (the "Event"). A true and correct copy of the Riverwalk Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

7. Pursuant to the Riverwalk Agreement, ALA was obligated to utilize 1,749 sleeping room nights at the Riverwalk Hotel at rates ranging from $209.00 per room, per night, plus applicable state and local taxes, to a rate of $229.00 per room, per night, plus applicable state and local taxes. *Id*. at p. 2.

8. The Riverwalk Hotel also reasonably anticipated that ALA' attendees would utilize, and the Riverwalk Hotel would receive revenue from, the ancillary services offered by the Hotel.

9. The Riverwalk Agreement contains a "Cancellation" clause, which governs the amount of liquidated damages ALA agreed to pay if it were to cancel its contracted Event. *Id*. at p. 8.

10. The Riverwalk Agreement's "Cancellation" clause unambiguously states:

Under the terms of this agreement, Marriott Riverwalk is reserving the room block described herein for the use of ALA. In the event these reserved facilities and related services are not used, the Hotel will experience monetary loss.

Therefore, in the unlikely even ALA should cancel its meeting after based on the below schedule, ALA will pay the Marriott Riverwalk at the time they give notice of cancellation, a cancellation fee in the amount of:

| Date of Decision to Cancel | Amount of Liquidated Damages Due |
| --- | --- |
| Contract signing – 2 year prior to arrival | 10% of Room Profit* |
| 729 days to 365 days prior to arrival | 25% of Room Profit* |
| 364 days to 180 days prior to arrival | 50% of Room Profit* |
| 179 days to arrival date | 100% of Room Profit |

*Room Profit equals ALA's group rate, less any commission, multiplied by 75% and then multiplied by the total number of rooms contracted for at the time of cancellation.

All cancellation notices must be received in writing.

However, if the Hotel is able to resell the space, and achieve 100% occupancy January 21-25, 2022, ALA will not be liable for any of the above charges and the Hotel will return ALA's payment in full. Additionally, ALA will not be liable for any cancellation charges if the association is instrumental in getting another group of similar size and revenue to book their meeting over the cancelled date.

*Id.* at p. 8.

11. The Cancellation Chart provides that ALA would owe "100% Room Profit" for a cancellation occurring within "179 days to arrival date." *Id.*

12. The Riverwalk Agreement contains a "Force Majeure" clause that states:

Should events beyond the control of the Marrian Riverwalk or ALA such as acts of God, war, curtailment or interruption of transportation facilities, strikes (except those involving hotel's employes) or the imminent threat thereof, threats or acts of terrorism or similar acts, disease, Stale Department or other governmental or

> international agency travel advisory, corporate travel restrictions, civil disturbance, or any other cause beyond the parties' control, which, in the party's reasonable judgment, would make it commercially impracticable, illegal or impossible for other party or its members to perform their obligations under the Agreement as they relate to the Event, such party may cancel the Agreement without liability upon written notice to the other party. Notice of cancellation may be sent at any time prior to the Event provided the cancelling party has met the requirements of this provision. In the event ALA decides to hold its Evant despite such circumstances, the Hotel shall waive any fees related to a reduced-sized Event (Including any room and food and beverage attrition fees and any function space rental fees) and shall offer the ALA's guests any lower room rate offered to guests during the contracted dates.

*Id.* at p. 11.

13. By letter dated September 14, 2021, ALA canceled the Event (the Riverwalk Termination Letter"). A true and correct copy of Riverwalk Termination Letter is attached hereto as **Exhibit B** and incorporated herein by reference

14. ALA' reasons for cancelling the Event are not covered under the terms of the Parties' Riverwalk agreement.

15. At both the time of ALA' cancellation and over the dates of its Event, no occurrence made performance illegal, impossible, or commercially impracticable.

16. Accordingly, the cancellation by ALA is without legal justification or excuse and therefore constitutes a material breach of contract.

17. The Riverwalk Hotel has been damaged by ALA' material breach of contract.

18. As noted above, as part of the Riverwalk Agreement, the Parties agreed that damages caused by a cancellation of the Event by ALA would be liquidated and governed by a "Cancellation" clause.

19. The cancellation by ALA of the Event occurred between "179 days to arrival date" for the Event.

20. Accordingly, pursuant to the Cancellation provision, ALA owes "100% of Room Profit," defined as "Room Profit equals ALA's group rate, less any commission, multiplied by 75% and then multiplied by the total number of room contracted at the time of cancellation *Id*. at p. 8.

21. For its cancelation of the Event, ALA owes the Riverwalk Hotel $246,740.00.

22. Marriott invoiced ALA for the $246,740.00 that ALA owed the Riverwalk Hotel for its cancellation of the Riverwalk Agreement. A true and correct copy of the Invoice is attached hereto as **Exhibit C** and incorporated herein by reference

23. The failure to pay the cancellation fee on the date of the cancelation constitutes a further material breach of contract.

24. On November 3, 2021, the Hotel sent a letter through counsel demanding that ALA satisfy its invoice. A true and correct copy of the November 3, 2021 Letter ("November Letter") is attached hereto as **Exhibit D** and incorporated herein by reference.

25. Pursuant to the Riverwalk Agreement, ALA's cancellation fee was due at the time ALA provided written notice of the cancellation.

26. ALA failed to pay the cancelation fee, as required under the terms of the Riverwalk Agreement.

27. The failure to pay the cancelation fee, as required under the terms of the Riverwalk Agreement, constitutes a further material breach of contract.

28. In the alternative, the Riverwalk Hotel is entitled to its actual damages in an amount to be proven at trial.

29. The Riverwalk Hotel has fully performed its obligations under the Riverwalk Agreement and is not itself in breach of the Agreement.

30. As a result of ALA' material breaches of the Riverwalk Agreement, including the failure to pay liquidated damages when due, it has become necessary for the Hotel to retain litigation counsel to enforce the terms of the Agreement.

31. All conditions precedent under the Riverwalk Agreement have been performed or have been excused.

**COUNT II - BREACH OF EXPRESS CONTRACT**
(RIVERCENTER CONTRACT - LIQUIDATED DAMAGES)

32. On December 29, 2016, upon the signature of the Rivercenter Hotel's representative, the Rivercenter Hotel and ALA entered into a written Group Sales Agreement, (the "Rivercenter Agreement"), pursuant to which ALA was obligated to hold its Event at the Rivercenter Hotel from January 16, 2022 through January 25, 2022. A true and correct copy of the Rivercenter Agreement is attached hereto as **Exhibit E** and incorporated herein by reference.

33. Pursuant to the Rivercenter Agreement, ALA was obligated to utilize 3,841 sleeping room nights at the Rivercenter Hotel at rat of from $214.00 per room, per night, plus applicable state and local taxes. *Id.* at p. 2.

34. The Rivercenter Hotel also reasonably anticipated that ALA' attendees would utilize, and the Rivercenter Hotel would receive revenue from, the ancillary services offered by the Hotel.

35. The Rivercenter Agreement contains a "Cancellation" clause, which governs the amount of liquidated damages ALA agreed to pay if it were to cancel its contracted Event. *Id.* at p. 8.

36. The Rivercenter Agreement's "Cancellation" clause unambiguously states:

> Under the terms of this agreement, Marriott Rivercenter is reserving the room block described herein for the use of ALA. In the event these reserved facilities and related services are not used, the Hotel will experience monetary loss.

Therefore, in the unlikely even ALA should cancel its meeting after based on the below schedule, ALA will pay the Marriott Rivercenter at the time they give notice of cancellation, a cancellation fee in the amount of:

| Date of Decision to Cancel | Amount of Liquidated Damages Due |
|---|---|
| Contract signing – 2 year prior to arrival | 10% of Room Profit* |
| 729 days to 365 days prior to arrival | 25% of Room Profit* |
| 364 days to 180 days prior to arrival | 50% of Room Profit* |
| 179 days to arrival date | 100% of Room Profit* |

*Room Profit equals ALA's group rate, less any commission, multiplied by 75% and then multiplied by the total number of rooms contracted for at the time of cancellation.

All cancellation notices must be received in writing.

However, if the Hotel is able to resell the space, and achieve 100% occupancy January 21-25, 2022, ALA will not be liable for any of the above charges and the Hotel will return ALA's payment in full. Additionally, ALA will not be liable for any cancellation charges if the association is instrumental in getting another group of similar size and revenue to book their meeting over the cancelled date.

*Id.* at p. 8.

37. The Cancellation Chart provides that ALA would owe "100% Room Profit" for a cancellation occurring within "179 days to arrival date." *Id.*

38. The Rivercenter Agreement contains a "Force Majeure" clause that states:

Should events beyond the control of the Marrian Rivercenter or ALA such as acts of God, war, curtailment or interruption of transportation facilities, strikes (except those involving hotel's employes) or the imminent threat thereof, threats or acts of terrorism or similar acts, disease, Stale Department or other governmental or international agency travel advisory, corporate travel restrictions, civil disturbance, or any other cause beyond the parties' control, which, in the party's reasonable judgment, would make it commercially impracticable, illegal or impossible for other party or its members to perform their obligations under the Agreement as they relate to the Event, such party may cancel the Agreement without liability upon written notice to the other party. Notice of cancellation may be sent at any time prior to the Event provided the cancelling party has met the requirements of this provision. In the event ALA decides to hold its Evant despite such circumstances, the Hotel shall waive any fees related to a reduced-sized Event (Including any room and food and beverage attrition fees and any function space rental fees) and shall

offer the ALA's guests any lower room rate offered to guests during the contracted dates.

*Id.* at p. 11.

39. By letter dated September 14, 2021, ALA canceled the Event (the Rivercenter Termination Letter"). A true and correct copy of Rivercenter Termination Letter is attached hereto as **Exhibit F** and incorporated herein by reference

40. ALA' reasons for cancelling the Event are not covered under the terms of the Parties' RiverCenter Agreement.

41. At both the time of ALA' cancellation and over the dates of its Event, no occurrence made performance illegal, impossible, or commercially impracticable.

42. Accordingly, the cancellation by ALA is without legal justification or excuse and therefore constitutes a material breach of contract.

43. The Rivercenter Hotel has been damaged by ALA' material breach of contract.

44. As noted above, as part of the Rivercenter Agreement, the Parties agreed that damages caused by a cancellation of the Event by ALA would be liquidated and governed by a "Cancellation" clause.

45. The cancellation by ALA of the Event occurred between "179 days to arrival date" for the Event.

46. Accordingly, pursuant to the Cancellation provision, ALA owes "100% of Room Profit," defined as "Room Profit equals ALA's group rate, less any commission, multiplied by 75% and then multiplied by the total number of room contracted at the time of cancellation *Id*. at p. 8.

47. For its cancelation of the Event, ALA owes the Rivercenter Hotel $541,869.00.

Plaintiff's Complaint
Page 8 of 11

48. Marriott invoiced ALA for the $246,740.00 that ALA owed the Rivercenter Hotel for its cancellation of the Rivercenter Agreement. *See* Ex. C, Invoice.

49. The failure to pay the cancellation fee on the date of the cancelation constitutes a further material breach of contract.

50. On November 3, 2021, Marriott sent a letter through counsel demanding that ALA satisfy its invoice. *See* Ex. D, November Letter

51. Pursuant to the Rivercenter Agreement, ALA's cancellation fee was due at the time ALA provided written notice of the cancellation.

52. ALA failed to pay the cancelation fee, as required under the terms of the Rivercenter Agreement.

53. The failure to pay the cancelation fee, as required under the terms of the Rivercenter Agreement, constitutes a further material breach of contract.

54. In the alternative, the Rivercenter Hotel is entitled to its actual damages in an amount to be proven at trial.

55. The Rivercenter Hotel has fully performed its obligations under the Rivercenter Agreement and is not itself in breach of the Agreement.

56. As a result of ALA' material breaches of the Rivercenter Agreement, including the failure to pay liquidated damages when due, it has become necessary for the Rivercenter Hotel to retain litigation counsel to enforce the terms of the Rivercenter Agreement.

57. All conditions precedent under the Rivercenter Agreement have been performed or have been excused.

58. Despite repeated demand for payment, ALA has failed and/or refused to pay all or any part of the amount owed.

59. ALA' actions have caused Plaintiff to retain the undersigned attorney to protect its rights in this matter. Plaintiff is entitled to a judgment against ALA for the attorneys' fees Plaintiff incurred in this matter to the maximum amount allowable under Illinois Law.

60. The Riverwalk Agreement and Rivercenter Agreement contain each contain an enforceable choice of law provision stating that the agreements shall be construed under Illinois law.

## PRAYER AND REQUEST FOR RELIEF

For the reasons above, Plaintiff Marriott Hotel Services, LLC, a Delaware limited liability company, as manager of the San Antonio Mariott Riverwalk and the San Antonio Marriott Rivercenter, requests that the Court enter a judgment against Defendant American Library Association, awarding Plaintiff:

(a) For liquidated damages pursuant to the Riverwalk Agreement in the principal amount of $246,740.00 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest on the Invoice amount of $246,746.00, from September 14, 2021 until the debt is paid in full;

(b) For liquidated damages pursuant to the Rivercenter Agreement in the principal amount of $541,869.00 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest on the Invoice amount of $541,869.00, from September 14, 2021 until the debt is paid in full;

(c) For Plaintiff's reasonable attorneys' fees and costs incurred herein, pursuant to applicable law;

(d) For post-judgment attorneys' fees and costs pursuant to applicable law; and

(e) For such other and further relief as the Court deems just and appropriate.

Dated: November 20, 2024                  Respectfully submitted

                                         By: /s/ Mitchell Lovett
                                                   **Mitchell Lovett (#6343634)**
                                                   RUDNER LAW OFFICES
                                                   12740 Hillcrest Road, Suite 240
                                                   Dallas, Texas 75230
                                                   T: 214.373.1900 | F: 214.373.0087
                                                   Email: mitchell@hotellawyers.com

                                                   **ATTORNEY FOR PLAINTIFF**
                                                   **MARRIOTT HOTEL SERVICES, LLC**